# EXHIBIT D

Filed 4/22/2021 5:04 PM
Tammy Robinson
District Clerk
Taylor County, Texas
Ashlee Stewart

Cause No. **12416-D** _____

| | | |
|---|---|---|
| MARKEL INSURANCE COMPANY, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | Taylor County - 350th District Court |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| ORIGIN BANCORP, INC., | § | |
| | § | |
| Defendants. | § | TAYLOR COUNTY, TEXAS |

## MARKEL INSURANCE COMPANY'S ORIGINAL PETITION

Markel Insurance Company ("Markel") files its Original Petition complaining of Origin Bancorp, Inc. ("Origin") and in support respectfully states as follows:

## I.
## DISCOVERY AND RULE 47 DISCLOSURE

1.     Markel intends to conduct discovery under Level 3.

2.     Markel seeks monetary relief over $1,000,000.00 and a demand for judgment for all other relief to which Markel is entitled. Tex. R. Civ. P. 47 (c)(5), (d).

## II.
## PARTIES

3.     Markel is an Illinois corporation with its principal place of business in Virginia. Markel is licensed to conduct business in the State of Texas.

4.     Defendant Origin is a Louisiana corporation with its principal place of business in Louisiana. Origin is licensed to conduct business in the State of Texas and may be served with process by serving its registered agent, Tina Ogle, at 3838 Oak Lawn Avenue, Suite P100, Dallas, Texas 75219, or wherever she may be found.

## III.
## JURISDICTION AND VENUE

5.     The amount in controversy is within the jurisdictional limits of this Court.

---

MARKEL INSURANCE COMPANY'S ORIGINAL PETITION                                          PAGE 1


True and correct copy of original filed in the Taylor County District Clerks Office

6.      Venue is proper within Taylor County as the events or omissions giving rise to the claims at issue occurred in Taylor County.

## IV.
## FACTS

7.      Lauren Constructors, Inc., was formed in 1984 in Atlanta, Georgia by C. Cleve Whitener III, a small specialty non-union contractor. In 1988, Mr. Whitener formed Lauren Engineers & Constructors, Inc. ("Lauren") and subsequently relocated Lauren's headquarters from Atlanta to Abilene, Texas, and took up residence in the historic Park Office Building. As the years progressed, Lauren grew into one of the more significant independent and privately-owned providers of professional engineering and construction services across the United States. For example, Lauren was recognized as a Top 100 Design-Build Firm in the United States by Engineering News-Record and a Top 400 Contractor. Lauren was also a major employer in several locations in Texas and across the United States and employed upwards of 1,000 full-time employees and contractors at certain times in its history. In particular, Lauren was a major employer in Abilene where its headquarters were based.

8.      Lauren performed projects across the power (including renewables), chemical and polymer, and oil and gas sectors. Among Lauren's various projects, it performed sophisticated engineering and construction work for the U.S. Government, state governments (including Texas), and local governments (including around Taylor County and Abilene). These projects oftentimes required Lauren to obtain surety bonds in the form of bid, performance, payment, and/or maintenance bonds. Obligees may require bonds as part of their risk management relating to a project or because such bonds are required by statute for certain public projects.

9.      In order to obtain surety bonds, Lauren established a relationship with Markel and asked Markel to provide surety bonds on its behalf. Surety bonds are not insurance. Unlike the



True and correct
copy of original
filed in the Taylor
County District Clerks Office

insurance relationship, sureties typically require, among other protections, that contract funds on bonded projects be protected and treated as trust funds for their intended purposes. To that end, Lauren and other related individuals and entities executed a General Agreement of Indemnity ("Indemnity Agreement") granting certain rights to Markel and establishing that all contract funds on bonded contracts are trust funds. To wit, Paragraph 24 of the Indemnity Agreement (the "Trust Provision") provides as follows:

> Indemnitor declares that all monies due and to become due under any contract or contracts covered by Bonds issued by [Markel] are trust funds, whether in the possession of the Indemnitors or otherwise, for the benefit of and for payment of all obligations for which [Markel] would be liable under any of said Bonds. Said trust also inures to the benefit of [Markel] for any liability or loss it may have or sustain under any of said Bonds, and this Agreement shall constitute notice of such trust.

10.    The Trust Provision identified Markel as the beneficiary of all funds subject to the Trust Provision, that the indemnitors, including Lauren, were the trustee, and that the res of the trust was any funds that were due or to become due on any project bonded by Markel. The Trust Provision also memorialized Markel's and Lauren's intent that the trust funds were for the benefit of Markel to ensure Markel suffered no loss, an essential component of longstanding surety law and key provision in the Indemnity Agreement. As such, Markel had at all times after June 19, 2018, when the Indemnity Agreement was executed, an equitable interest in all bonded contract proceeds for projects where Markel issued bonds as a trust beneficiary.

11.    In reliance on, among other things, the Trust Provision and at the request of Lauren and the other indemnitors, Markel issued certain surety bonds on behalf of Lauren. More specifically, Markel issued payment bonds and performance bonds (the "Bonds") naming Lauren as principal on the following construction projects (the "Projects"):

---



True and correct copy of original filed in the Taylor County District Clerks Office

Bond No.: 4421055
Obligee: Siemens Energy, Inc.
Project: US 85 Los Alamos National Laboratory (LANL) Phase 1 Steam Plant Replacement Project Purchase Order No. 500802091 (the "Los Alamos Project")

Bond No.: 421088
Obligee: Solairedirect USA Incorporated
Project: 285MWp Solar Facility located near Lamesa Town, Texas in Borden County, Texas (the "Solar Project")

12.     The Los Alamos Project and the Solar Project (collectively referred to as the "Projects") were substantial with a combined contract value of more than $60 million. Lauren's work on the Projects was also complex in part due to security and technical requirements of the Los Alamos National Laboratory, which is operated by the United States government.

13.     After work began on these Projects, Mr. Whitener, still President and CEO of Lauren, tragically passed away in a plane crash in February 2020. Mr. Whitener was critical to Lauren's operations and while Lauren continued operations after his accident, it began exploring a potential sale of the company and a path to winding down its operations without a significant impact on its employees and creditors. Lauren's discussions with potential purchasers focused on how those purchasers could complete Lauren's ongoing projects, including the bonded Projects. Origin was well aware of these discussions.

14.     Unfortunately, during the same time Lauren also began to experience short-term financial difficulties. Lauren engaged in discussions with Origin, with whom Lauren maintained its banking relationship, about its short-term financial difficulties and its strategy for the sale of the company to ensure it had Origin's support. Lauren understood from its conversations with Origin that Origin would not take action or exercise any rights that would materially impact Lauren's financial ability to continue operating and interrupt negotiations with prospective purchasers to ensure a smooth transition not only for Lauren, but Lauren's numerous employees

---

MARKEL INSURANCE COMPANY'S ORIGINAL PETITION                                        PAGE 4



True and correct copy of original filed in the Taylor County District Clerks Office

who relied on Lauren for their livelihood. To that end, Origin requested that Lauren provide ongoing detailed reporting of anticipated receivables from the bonded and unbonded projects that Lauren was completing, including the Projects. Lauren provided Origin all such information and had ongoing calls with Origin to regularly update it on Lauren's financial position and the status of negotiations with prospective purchasers. Origin knew exactly what projects were bonded, which, of course, involved trust funds.

15.     Armed with the knowledge of when, where, and how the trust funds were to be transferred from the reporting Lauren provided and their ongoing conversations with Lauren, Origin plotted a course to a point when it would be most advantageous to maximize its sweep of funds, including trust funds, which Origin certainly knew would cripple Lauren, destroy Lauren's ability to sell the company, and prohibit Lauren from compensating its employees, including paying for their benefits.

16.     Exercising their undisclosed plan targeting particular expected contract funds, which included a significant amount of trust funds, Origin abruptly swept all funds from Lauren's operating accounts, without notice to Lauren. As Origin certainly knew would happen, the sweep severely crippled Lauren's ability to, among other things, satisfy payroll obligations, make payments to insurance providers, ensure benefits remained in place for its employees, and pay vendors on its projects. This sweep was contrary to Lauren's understanding that Origin would take no adverse action against it and was performed without notice to Lauren. The sweep included $1,383,156.54 in trust funds from the Projects.

17.     Origin's actions made it impossible for Lauren to proceed with its work on the Projects and Lauren was threatened with termination across its projects, including the bonded Projects. Having been starved of its working capital by Origin's actions, Lauren's negotiations

---


True and correct copy of original filed in the Taylor County District Clerks Office

with its potential buyer also evaporated, which extinguished Lauren's plan to smoothly transition its operations and pay its employees.

18.     Having been betrayed by Origin, Lauren approached Markel with regard to the Projects and requested financial assistance to, at least, ensure critical payroll would be paid for its employees to buy some time to complete its potential sale to an identified purchaser. Markel agreed to provide some short-term financial assistance to pay certain employees. But, since Lauren's payroll account was set up at Origin with all the critical information to pay employees quickly, the parties needed Origin's cooperation. True to form, Origin tried to leverage a release from Lauren, having obviously realized it had acted wrongfully with the sweep, instead of cooperating to get Lauren's employees paid.

19.     When Markel became aware of Origin's actions, Markel demanded that Origin return the $1,383,156.54 in trust funds. Despite its knowledge of the trust character of the funds, Origin refused and continues to refuse to return the trust funds. Had Origin complied with Markel's demand, Markel could have used the trust funds as intended by the Indemnity Agreement to facilitate Lauren's operations, including paying Lauren's employees, keeping Lauren's path to a soft landing alive, and avoiding a default on the Los Alamos Project.

20.     Unfortunately, in the aftermath of Origin's actions, Lauren had no choice but to file for Chapter 7 bankruptcy protection. Lauren is now unable to finish its projects, including the bonded Projects. Origin's wrongful action also effectively destroyed any potential sale to a prospective purchaser that would have provided a smooth transition of Lauren's operations. As a result, Markel has and will continue to suffer losses and damages ultimately caused by Origin's wrongful actions.



True and correct
copy of original
filed in the Taylor
County District Clerks Office

## V.
## CAUSES OF ACTION

### COUNT ONE
### DECLARATORY JUDGMENT

21. Markel incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

22. Pursuant to the Trust Provision in the Indemnity Agreement, all monies due and to become due on the Projects were trust funds for the benefit of Markel.

23. On March 4, 2021, March 8, 2021, and March 10, 2021, Lauren received wire transfers in its account at Origin representing monies due on the Projects totaling $1,383,156.54, which Origin wrongfully swept and refuses to return.

24. Accordingly, consistent with Chapter 37 of the Texas Civil Practices and Remedies Code, Markel asks the Court to declare that the $1,383,156.54 seized by Origin are trust funds and that Markel is the beneficiary and thus legal owner of the wrongfully seized $1,383,156.54 trust funds.

### COUNT TWO
### CONVERSION

25. Markel incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

26. Markel is the rightful owner of the $1,383,156.54 in trust funds that were deposited into Lauren's account with Origin pursuant to the Trust Provision in the Indemnity Agreement.

27. Despite the trust characteristic of these funds, Origin unlawfully assumed and exercised dominion and control over the trust funds that rightfully belong to Markel.

---



True and correct
copy of original
filed in the Taylor
County District Clerks Office

28.     After Markel demanded the return of the trust funds, Origin knowingly, intentionally, and wrongfully refused, and continues to refuse, to return the trust funds. Origin has, therefore, wrongfully converted the trust funds.

29.     Origin's wrongful act of conversion has caused Markel to suffer significant financial losses and damages, including not only the trust funds, but also all loss incurred by Markel resulting from Origin's sweep of the trust funds.

### COUNT THREE
#### MONEY HAD AND RECEIVED

30.     Markel incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

31.     The $1,383,156.54 transferred into Lauren's account maintained by Origin were trust funds being held in trust for the benefit of Markel pursuant to the Trust Provision in the Indemnity Agreement. Origin wrongfully swept Lauren's accounts and seized the $1,383,156.54 in trust funds, which remain in Origin's possession.

32.     Origin refused and continues to refuse to return the $1,383,156.54 in trust funds.

33.     In equity and good conscience, Markel is entitled to the return of the $1,383,156.54 in trust funds, which, in fact, belong to Markel as the legal and equitable owner.

### COUNT FOUR
#### UNJUST ENRICHMENT

34.     Markel incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

35.     Origin wrongfully swept Lauren's account capturing $1,383,156.54 in trust funds from the Projects to which Origin was not the legal and equitable owner. Markel is the legal and equitable owner of the trust funds.

---

MARKEL INSURANCE COMPANY'S ORIGINAL PETITION                                    PAGE 8



True and correct
copy of original
filed in the Taylor
County District Clerks Office

36.     Origin's retention of the trust funds has unjustly enriched Origin while causing Markel to suffer significant damages.

37.     Therefore, in the interest of equitable justice, Origin should be ordered to return the unjust enrichment of $1,383,156.54 to Markel.

## COUNT FIVE
### ATTORNEY'S FEES

38.     Markel incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

39.     Markel is entitled to recover from Origin all reasonable attorney's fees which have and will be incurred through the trial.

## COUNT SIX
### COURT COSTS AND INTEREST

40.     Markel incorporates and realleges the factual allegations in the foregoing paragraphs as if set forth herein.

41.     Markel is also entitled to recover from Origin all costs of court along with pre-judgment and post-judgment interest at the maximum legal rate allowed by law.

## VI.
## <u>CONDITIONS PRECEDENT</u>

All conditions precedent to Markel's entitlement to assert the above claims and causes of action have occurred or have been satisfied, waived, or excused.

## VII.
## <u>REQUEST FOR RELIEF</u>

Markel requests that Origin be cited to appear, answer this Petition, and that the Court award Markel the following relief:



True and correct
copy of original
filed in the Taylor
County District Clerks Office

A.    Declare that Markel is the beneficiary and thus legal owner of the seized trust funds;

B.    Issue a judgment against Origin in the amount of Markel's actual and consequential damages;

C.    Award attorney's fees, costs of court, and pre-judgment and post-judgment interest calculated at the maximum rate allowed by law; and

D.    Such other and further relief at law or in equity to which Markel is justly entitled.

Respectfully submitted,

*/s/ Phillip W. Pemberton*
CHRISTOPHER R. WARD
Texas State Bar No. 24008233
PHILLIP W. PEMBERTON
Texas State Bar No. 24107892
TRACY L. R. KAMBOBE
Texas State Bar No. 24117392
CLARK HILL STRASBURGER
2600 Dallas Parkway, Ste. 600
Frisco, Texas 75034
Telephone:    (214) 651-4722
Facsimile:    (214) 659-4108

**ATTORNEYS FOR MARKEL INSURANCE COMPANY**

STATE OF TEXAS
COUNTY OF TAYLOR
CERTIFIED TO BE A TRUE AND CORRECT COPY
OF THE ORIGINAL IN MY CUSTODY
GIVEN UNDER MY HAND AND SEAL OF OFFICE
DATED____05/26/2021____A.D.
TAMMY ROBINSON
DISTRICT CLERK OF TAYLOR COUNTY, TEXAS
BY_____

---



True and correct
copy of original
filed in the Taylor
County District Clerks Office