Penn C. Huston
phuston@mouerhuston.com
Jeffrey R. Elkin
jelkin@mouerhuston.com
**MOUER HUSTON PLLC**
349 Heights Blvd.
Houston, TX 77007
(832) 410-4540
*Counsel for Origin Bancorp, Inc.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| IN RE: § § **LAUREN ENGINEERS &** § **CONSTRUCTORS, INC.,** § § § *Debtor*. § | | Chapter 7  Case No. 21-10051-RLJ7 |
| **MARKEL INSURANCE COMPANY** § § *Plaintiff*, § § V. § § **ORIGIN BANCORP, INC.** § § *Defendant.* § § | | Adversary No. 21-01001-RLJ  Civil Case No. 21-cv-00151-H |

## DEFENDANT ORIGIN BANCORP, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO WITHDRAW THE REFERENCE

Defendant Origin Bancorp, Inc. ("*Origin*") files this response in opposition to Plaintiff Markel Insurance Company's ("*Markel*") Motion to Withdraw the Reference Under 28 U.S.C. §157(d), Federal Rule of Bankruptcy Procedure 5011, and Local

1

Bankruptcy Rule 5011-1 [Bankr. Dkt. 11] [Civ. Dkt. 1-1] ("*Motion*"), and in support states the following:

## I. Introduction

The legal and factual allegations in Markel's lawsuit relate directly to the Lauren Engineers & Constructors, Inc. bankruptcy estate in the following important ways (among others):

1. **Markel claims that it owns assets that the Debtor and Trustee believe belong to the estate.** Markel's lawsuit claims that all money owed or collected for Debtor's work for Siemens Energy, Inc. or Solairedirect are trust funds, and that Markel is the legal and equitable owner. The Debtor's schedule of assets, however, includes approximately $1.65 million in accounts receivable that Siemens and Solairedirect owe to the Debtor. And, the Trustee has made efforts to collect on those accounts receivable.

2. **Markel asserts factual allegations that relate to estate claims the Trustee is evaluating.** In paragraphs 14 through 18 of its lawsuit [Bankr. Dkt. 1-4] Markel accuses Origin of plotting against the Debtor, destroying the Debtor's ability to sell the company, targeting particular Debtor funds, and misleading the Debtor. Markel has, thus, put at issue factual allegations that relate to the Debtor and the potential claims that the Trustee is evaluating on behalf of the debtor.[1]

3. **Markel is seeking to obtain $1.3 million that was in the Debtor's possession one month before filing bankruptcy.** Origin has a perfected security interest in the Debtor's accounts. Markel complains that Origin was not permitted to sweep monies from the Debtor's accounts when the Debtor defaulted on its loan obligations, because, as Markel puts it: "Markel is the rightful owner of the $1,383,156.54 in trust funds that were deposited **into Lauren's account** . . ." [Bankr. Dkt. 1-4 at ¶ 26 (emphasis added)] The lawsuit thus tries to transfer to Markel funds that were in the possession of the Debtor shortly before filing, and, in effect, avoiding the setoff for its own benefit.

---

[1] All of these claims are false, and it is not at all clear how Markel claims to have come by this (false) factual information. But having inserted these claims into its lawsuit, the claims certainly relate to the Debtor.

Markel seeks withdrawal of the reference based on the permissive grounds stated in 28 U.S.C. §157(d). But permissive withdrawal under section 157(d) requires "cause," which, as further described below, does not exist here. Because the Bankruptcy Court is in a better position to efficiently decide this case, the Motion should be denied.

## II.    Background

This lawsuit is a dispute over $1,383,156.54 in funds ("***Funds***") received by The Lauren Corporation and Lauren Engineers & Constructors, Inc. (collectively, "***Lauren***") as payment for engineering and construction services. Markel alleges that Origin improperly diverted the Funds from Lauren's operating account. However, Origin has a perfected security interest in the Funds pursuant to an October 15, 2013 Letter Loan Agreement, Promissory Note, and Security Agreement between Origin and Lauren. The Security Agreement granted Origin a security interest in all of Lauren's "[a]ccounts ... now owned or existing, as well as any and all that may hereafter arise ...." Origin perfected its security interests on October 22, 2013, by filing UCC-1 Financing Statements in Texas and Delaware. True and correct copies of the Financing Statements are attached as **Exhibit A**. The Financing Statements perfected Origin's interest in, among other things:

> (a)    All Accounts. All accounts now owned or existing, as well as any and all that may hereafter arise or be acquired by the Debtor, and all the proceeds and products thereof, including without limitation, all notes, drafts, acceptances, instruments and chattel paper, arising therefrom, and all returned or repossessed goods arising from or relating to any such accounts, or other proceeds of any sale or other disposition of inventory or other property of [Lauren].

Origin timely filed amendments to the UCC-1 Financing Statements in Texas and Delaware in October 2018 to continue its perfected interest in Lauren's accounts for an additional five years. True and correct copies of those filings are attached as **Exhibit B**.

On January 20, 2021, Origin gave Lauren written notice that Lauren was in default, and subsequently tried for the next several weeks to work with Lauren to reach a solution. During these discussions, Origin repeatedly informed Lauren that if an acceptable solution to the default could not be found, Origin would exercise its remedies pursuant to its security interests, including sweeping Lauren's accounts. On or about March 8, 2021, Lauren notified Origin that it would not post additional collateral. Based on that refusal and the existing defaults, Origin swept Lauren's accounts on March 9, 2021, and thereafter.

On April 8, 2021, Lauren filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code.

On April 23, 2021, Markel filed this lawsuit in the 350th District Court, Taylor County, Texas, contending that it has a superior interest in the Funds to Origin's perfected security interests ("***Lawsuit***"). Markel asserts that (1) in June 2018, Markel and Lauren entered into a General Agreement of Indemnity ("**GAI**") in connection with surety bonds that Markel issued for two of Lauren's construction projects, and the GAI contained certain language that created a trust; (2) the Funds constitute trust funds to which Markel is the beneficiary, and (3) Origin allegedly caused intentional harm to the Debtor. [Bankr. Dkt. 1-4] Therefore, according to Markel, it possesses a legal and equitable interest in the Funds that is superior to Origin's perfected security interest. Markel is seeking a declaratory judgment that it is the beneficiary and legal owner of the Funds, and asserts causes of action

against Origin for conversion, money had and received, and unjust enrichment. Essentially, Markel is trying to recover for its own benefit, money that had been in the possession of the Debtor.

On May 26, 2021, Origin timely removed the Lawsuit to the Northern District of Texas Bankruptcy Court, Abilene Division as an adversary proceeding in the Lauren Bankruptcy. [Bankr. Dkt. 1]. Origin's removal is based on "related to" jurisdiction under 28 U.S.C. § 1334(b) including that the Lawsuit is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O). [Bankr. Dkt. 1 at ¶¶ 11-12]. Origin also removed the Lawsuit based on diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(a). *Id*. at ¶¶ 14-18.

## III.    Argument

In the Motion, Markel argues that the District Court should exercise its permissive powers under 28 U.S.C. §157(d) and withdraw the reference. *See* Motion at ¶ 15. Section 157(d)'s permissive withdrawal provision allows a district court to withdraw a reference on its own motion or on a timely motion "for cause shown." 28 U.S.C. § 157(d). However, a "district court should not withdraw reference to the bankruptcy court of a core proceeding unless its withdrawal was based on a sound, articulated foundation." *Burch v. Select Portfolio Servicing, Inc*., 4:20-CV-00423-O-BP, 2020 WL 3619532, at *3 (N.D. Tex. May 28, 2020) (internal quotations omitted). Markel, as the movant, bears the burden to establish "cause" for permissive withdrawal. *Cross Keys Bank v. Karcredit, LLC*, No. 3:20-cv-00942, 2020 WL 5046872, at *2 (W.D. La. Aug. 26, 2020).

A.  The Fifth Circuit's Factors for "Cause" Weigh Against Withdrawal of the Reference.

The Fifth Circuit has articulated seven factors to be considered when determining whether "cause" exists under section 157(d). *Texas United Housing Program, Inc. v. Wolverine Mortgage Partner Retirement*, No. 3:17-CV-977-L, 2017 WL 3822754, at *9 (N.D. Tex. July 18, 2017) (citing *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985)). These factors include: (1) whether the proceedings are "core" proceedings; (2) the effect of the withdrawal on judicial efficiency; (3) uniformity in bankruptcy administration; (4) reduction in forum shopping; (5) fostering the economical use of the debtors' and creditors' resources; (6) expediting of the bankruptcy process; and (7) whether or not there is a jury demand. *Id*. Based on these factors, cause does not exist to withdraw the reference in this proceeding.[2]

*First*, Markel's claims in the Lawsuit constitute core proceedings that the Bankruptcy Court is well-positioned to decide. Under section 157(b)(2), core proceedings include "determinations of the validity, extent, and priority of liens" (§157(b)(2)(K)) and "proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ...." (§ 157(b)(2)(O)). Here, Markel's contentions require a determination of whether Origin has a lien on Lauren's accounts, whether Origin was permitted to sweep funds from Lauren's accounts, and

---

[2] In the Motion, Markel cites to the factors considered by the Second Circuit and the Third Circuit, instead of the Fifth Circuit. *See* Motion at ¶ 16 (citing to *Orion Pictures Corp. v. Showtime Networks, Inc*., 4 F.3d 1095 (2d Cir. 1993) and *In re Pruitt*, 910 F.2d 1160 (3d Cir. 1990). Markel never directly references the factors considered by the Fifth Circuit, although there is overlap between the Fifth Circuit's seven factors and the Second and Third Circuits' five.

whether Markel has a beneficial interest in the Funds that were in the Debtor's account that is superior to Origin's. As a result, Markel's claims constitute core proceedings under sections 157(b)(2)(K) and 157(b)(2)(O). Markel appears to agree, as it states in paragraph 1 of the Motion: "This is a core proceeding pursuant to 28 U.S.C. § 157(b)." Motion at ¶ 1. Yet, at other points in its motion, Markel states—with virtually no analysis—that the matter is not core. *Id.* at ¶18.

*Second*, withdrawal of the reference will not promote judicial efficiency (Factor 2), uniformity in bankruptcy administration (Factor 3), foster the economical use of the debtor's and creditors' resources (Factor 5), or expedite the bankruptcy process (Factor 6). Markel argues (without providing any support for its claim) that withdrawing the reference will not hinder judicial efficiency because the Lawsuit will likely take "much longer" to litigate than the time that will be required to administer Lauren's Bankruptcy Case. *See* Motion at ¶ 20. But instead of having the Bankruptcy Court preside over "all matters related to the debtor and [its] assets [in] a single forum," withdrawal of reference will separate this case from the Bankruptcy Case, specifically the core issues relating to the nature of Origin's liens on Lauren's accounts and Markel's interest in the Funds. In fact, the separation would thwart judicial efficiency and weighs against withdrawing the reference. *See Burch*, 2020 WL 3619532, at *4 (observing that "[j]udicial efficiency is promoted" when litigation involving the debtor's assets is conducted before the Bankruptcy Judge administering the Bankruptcy Case); *Texas United*, 2017 WL 3822754, at *10 (noting that one of the benefits of referral to bankruptcy court is to "bringing all matters related to the debtor and his assets into a single forum.").

7

*Third*, although Markel contends that it is not forum shopping by filing the Motion (Factor Four), it certainly comes close. *See* Motion at ¶ 19. Rather than abide by the Northern District of Texas's Miscellaneous Order No. 33 ("**Order of Reference**"), Markel is affirmatively trying to circumnavigate around the reference and move this case to the District Court. Although it is not certain what Markel's motives are in doing so, it makes sense that Markel would be hesitant to make an argument that a Bankruptcy Debtor's accounts receivable are subject to a trust fund, putting them out of reach of all creditors, when Markel did not perfect any claim to the Debtor's property.

*Finally*, while Markel asserts that it intends to request a jury trial (Factor 7), it has not yet done so. *See* Motion at ¶ 23 ("Markel does intend to timely request a jury trial"). Regardless, a potential jury trial request should not have a bearing at this time on the Motion. *Texas United*, 2017 WL 3822754, at *10 ("courts generally do not withdraw a reference on this basis until it is **readily apparent** that [the plaintiff's] jury trial rights are jeopardized.") (emphasis added) (internal quotations omitted).

This recognized judicial reluctance to withdraw a reference based on a jury trial request is particularly acute where – as here – "it is not apparent that a jury trial of [the] claims will be required." *Id*. (citations omitted). Given the nature of Markel's claims, it is very likely that the Lawsuit can be fully resolved at the summary judgment stage and that a jury trial will be unnecessary. The determination of whether Origin has a lien on Lauren's accounts, whether Origin was permitted to sweep funds from Lauren's accounts, and whether Markel has a beneficial interest in the Funds can most likely be resolved as a matter of law based on the relevant documents – including, the October 15, 2013 Letter

Loan Agreement, Promissory Note, and Security Agreement between Origin and Lauren, Origin's UCC-1 Financing Statements, and the GAI between Markel and Lauren.

As a result, Factor Seven weighs against granting the Motion, at least at this time. *Id*. (holding that the plaintiff's demand for a jury trial "does not weigh toward withdrawing the referral either, at least at this time" where it is unclear whether a jury trial will be required). "If and when the threat to [Markel's] Seventh Amendment Rights becomes ***concrete***, ... [it] may seek appropriate remedies at that time." *Id*. (emphasis added).

B.  The Facts to be Determined Under Local Rule 5011-1(a) Do Not Support Withdrawal of the Reference.

Markel contends that a majority of the items identified in Local Rule 5011-1(a) to be considered and determined by the Bankruptcy Court at the August 25, 2021, status conference on the Motion weigh in favor of withdrawing the reference. *See* Motion at ¶¶ 22-24. Markel's contention is misplaced.

The items in Local Rule 5011-1(a) largely call for a determinations of objective facts, which the Bankruptcy Judge provides to the District Judge hearing the Motion – e.g., has a response to the Motion been filed (Item One); has a motion to stay the Lawsuit been filed (Item Two); is the proceeding core or non-core, or a combination of the two, and have the parties consented to entry of a final order by the bankruptcy judge (Item Three); has a jury trial been requested (Items Four and Five); has a Scheduling Order been entered (Item Six); and are the parties ready for trial (Item Seven). The answers to these questions inform the Bankruptcy Court's recommendation to the District Court (Item Eight).

As of the date of Origin's Response, Origin's proposed answers to the items in Local Rule 5011-1(a) are:

Item One: Origin has filed a response to the Motion.

Item Two: A motion to stay the Lawsuit has not been filed.

Item Three: The Lawsuit is core, for the reasons discussed above. If, for any reason it is determined to be non-core, Origin has consented to entry of a final order by the Bankruptcy Judge. *See* Bankr. Dkt. 1 at ¶ 12.

Item Four: A jury trial has not been requested. Even if a jury trial is requested, it should not have a bearing at this time on the Motion. *Texas United*, 2017 WL 3822754, at *10.

Item Five: A jury trial has not been requested. Even if a jury trial is requested, it should not have a bearing at this time on the Motion. *Texas United*, 2017 WL 3822754, at *10.

Item Six: Under the Bankruptcy Court's Order Regarding Adversary Proceedings Trial Setting and Alternative Scheduling Order, the Alternative Scheduling Order is scheduled to become effective on August 23, 2021. [Bankr. Dkt. 8]. As noted above, the parties filed on August 20, 2021, a Stipulated Scheduling Order. [Bankr. Dkt. 17-1].

Item Seven: The parties are not ready for trial.

Item Eight: Given the answers to the items in Local Rule 5011-1(a), Origin respectfully suggests that the Bankruptcy Judge recommend that the Motion be denied and that the reference not be withdrawn.

## IV. Conclusion.

For the reasons discussed above, Origin requests that the Motion be denied in its entirety, that the reference to the Bankruptcy Court under the Northern District of Texas's Miscellaneous Order No. 33 not be withdrawn, and for such other relief to which it is entitled.

Date: August 24, 2021.

        Respectfully Submitted,

        MOUER HUSTON PLLC

        By: */s/ Penn C. Huston*
            Penn C. Huston
            State Bar No. 00796804
            phuston@mouerhuston.com
            Jeffrey R. Elkin
            State Bar No. 06522180
            jelkin@mouerhuston.com
            Mouer Huston PLLC
            349 Heights Blvd.
            Houston, TX 77007
            Telephone (832) 410-4540
            Facsimile (832) 209-8158
            *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2021, a true and correct copy of the foregoing was served through the Court's CM/ECF system.

        */s/ Penn C. Huston*
        Penn C. Huston